Good morning, your honors. May it please the court, Kim Sandberg, on behalf of Jerry Von Tobel, I would like to reserve two minutes of rebuttal time. Jerry Von Tobel was denied the right to a trial by an impartial jury, and that's because one of the jurors on his case committed misconduct. Juror number 200, in defiance of the court's order, had an unauthorized conversation with his neighbor, who was a police officer, about the case. Juror 200 told his neighbor that he was a juror on a criminal trial, that the facts of the trial were sickening to him, that he was really struggling with this trial. In fact, he told his neighbor that the trial was making him lose sleep, and his neighbor, who, as a member of law enforcement, should have known better, engaged with juror 200 about the case. And the culmination of this conversation is that the police officer told juror 200, well, Jerry Von Tobel wouldn't be there if he didn't do something, which undermined the presumption of innocence. The police officer didn't know Mr. Von Tobel's name. He did not know. That is true. He did not know what the crime was. That is true. They had no idea what juror 200 was actually referring to, other than he had a case that sickened him. Correct, correct. That statement, though, despite the fact that the police officer didn't know Jerry Von Tobel's name or the nature of the crime, that statement is precisely the type of third-party contact that triggers the presumption of prejudice under clearly established federal law. So it seems like it may have been an improper conversation, but how, and maybe this is what you're just leading into, how is it harmful in this particular case? In this case, it's harmful because what the state court should have done is that they should have recognized that the contact was possibly prejudicial and, therefore, triggered the presumption of prejudice and required the prosecution to attempt to rebut that presumption. But didn't that actually happen? There were questions. The district court brought the juror in and asked him questions, and the juror assured, because this all happened, this didn't come up until after the trial was over, right? Correct. So the trial's over, the conviction happens, then they find out that this conversation occurred. And as I understand it, the district court brought the juror in and questioned him and said, could you be fair? And he said, yes. Did this affect your decision? And he said, no. And in fact, he said, I waffled back and forth on conviction or not conviction. So why doesn't that satisfy that standard? Under the controlling cases for extraneous influence, the courts do not, no court has found that a juror's subjective opinion about whether or not he was influenced by the extraneous influence is enough to rebut the presumption. And in fact, Maddox said that the juror could not testify as to how the extraneous influence operated on his mind. In Godoy, this court in the en banc decision noted that the most relevant evidence on remand for a hearing is the actual content of the communication, not whether the juror himself. So it's an objective test. Correct. But why can't the juror's responses, we ask district courts to make assessments all the time, and so why can't that enter into the district court's assessment? I mean, he can tell whether the juror's being cagey in his answer, and maybe it's not just positive, but why can't that be part of determining how this objectively played out? Well, under the controlling cases, the courts have looked at the content of the communication, the surrounding circumstances of the communication. In Tarango, this court said it could consider limited evidence of how the content affected the juror, but not whether the juror cast his vote based on the content. So it does appear that courts can consider limited evidence of. What about his statement? What about the juror's statement that he apparently waffled back and forth on conviction or not conviction? That seems to be a little bit different. That seems to be an objective fact that isn't necessarily related to whether he was prejudiced by the statement. I do think the court can consider that the juror waffled back and forth, and I think, in fact, that that helps Mr. Vontobel's argument. If the juror was waffling back and forth, that means that he may have had a reasonable doubt. And the statement from his police officer neighbor is the type of statement that gave Juror 200 permission to find Mr. Vontobel guilty. At the end, if he's waffling back and forth and then he thinks to himself, well, he wouldn't be here if he didn't do something, that's the kind of statement that really gave him permission to say, I'm going to find him guilty. And so I think the waffling back and forth actually suggests that the juror was struggling and that this extraneous influence did, in fact, influence his verdict. Did the juror say that it caused him to waffle back and forth or he just said the evidence did that? He didn't say what caused him to waffle back and forth. He didn't say whether it was the evidence or the content of the statement. He simply said, I hadn't made up my mind and throughout deliberations I waffled back and forth. And, in fact, the entire jury did. The jury took- It was just like the other jurors. They all had a problem with the case, right? It appears so. The jury really struggled. It took the jury about four days of deliberation. It was approximately 20 hours of deliberation. The jury sent three notes to the court telling the court they were deadlocked, they couldn't come to a decision. Finally, they did come to a decision after four days. I'd like to point out that under the extraneous influence case law, under Parker v. Gladden, if a jury struggles, that's actually evidence that there was prejudice, that the extraneous influence was prejudicial. Did they come back at one point and say they could have a verdict on certain counts but not others? They did. The first note, they said they had agreed on all of the child abuse charges. I believe it was five child abuse charges that did not involve sex assault charges and that they had agreed on one of the sex assault charges. And, in fact, that was the one charge for which Mr. Vontobel was acquitted. On another note, they said they had agreed on 16 counts but hadn't agreed on the other counts. And then, finally, after the four days of deliberations, they came back with a guilty on 26 of the 27 counts. Can I ask about the standard of review? What are we looking at? The district court performed this inquiry. Do we review this if we decide – as I understand, one of your arguments is that the district court just erred because he looked at Nevada case law, which your argument is is inconsistent with federal case law in this question. So if we find that to be true, does that automatically give your client the relief that he's requested, or do we still need to go in and say, well, even though he applied the wrong, incorrect – if he applied the incorrect legal standard, the facts would have still been enough under the correct legal standard? If I'm understanding your honors, I think, yes. So we're asking this court to review the claim de novo because the Nevada Supreme Court applied a legal standard that's contrary to clearly established federal law under Maddox and Remmer. And then this court would review the claim de novo, would decide was the contact possibly prejudicial, and if so, could the state rebut that presumption? I'm asking this court –  So Godoy – this court laid out in Godoy numerous things that – hypothetical things that the state could do to rebut the presumption. But Godoy is clear that it's a – And what would those things be? In this case, what would the state have to do in order to rebut the presumption? The state would have to bring in witnesses that could somehow rebut the presumption. I think it would be very hard, if not impossible, for the state to do so. Well, how would you do that? I've tried to think about what the state could possibly do to rebut the presumption. I suppose if they brought the police officer in to testify and he said, I don't even know Juror 200, I mean, that might be something that could rebut the presumption. But it wouldn't help that Juror 200 was lying, then, would it? No. If the police officer came and said he didn't know Juror 200, that actually wouldn't go well for Juror 200's veracity. Correct, correct, which goes to my argument that I think – I guess the problem I'm having here is I'm just trying to figure out what more some court was supposed to do here. We have – as soon as we find out the trial court conscientiously brings the juror in, asks about the circumstances, allows the juror to be cross-examined by counsel, what more was the trial court supposed to do? The trial court – Because that leads me then to this conclusion that what you're really asking for is just simply a per se rule. Well, Your Honor, GDOI stands for the proposition that the state has to bring in evidence not within the record to rebut the presumption. And evidence like that would be, for example, did the – the state could have brought in the police officer and asked, did this conversation happen? What was the nature of the conversation? The state could have brought other jurors in to ask, was this information told to you? And do we have to have the police officer in because the police officer needs to corroborate what the juror is saying because the judge can't make a judgment that the juror is telling him the truth? The judge can decide that the juror is credible but still find that the extraneous influence affected his verdict. Right, but that doesn't have anything to do with what evidence you have to bring in. What other evidence the state could possibly bring in? And if there isn't any evidence that the state can bring in, then you're asking for a per se rule. Your Honor, I do think there's other evidence that the state could have attempted to bring in. Like what? Like the other jurors. And if they couldn't bring in any other evidence, then we have all the evidence before us that we're going to have.  I think the court could have brought in the other jurors and asked them whether Juror 200 shared the conversation with them. There's no allegation of that at all, was there? No, there's not. There's not, but that should have... That doesn't rebut anything because we don't know that he talked to them about it at all and he didn't say that. We don't because the trial court didn't require the state to rebut the presumption at a hearing. And had she done so, that evidence may have been available to the court. But again, Godoy is very clear that it has to be outside of the record evidence. And Godoy enumerates hypothetical evidence that the state can bring in, such as jurors' testimony and things like that. Godoy also stands for the proposition that this is a really heavy burden and a really hard presumption to rebut. And I see that I've been out of time for... I will allow some time for rebuttal. Thank you. Good morning, and may it please the Court. My name is Natasha Gabriel on behalf of the State of Nevada. This Court should affirm the district court's order because von Tobel fails to demonstrate that the juror's conduct triggered the presumption of prejudice. Petitioner pointed to Godoy heavily as to what the state could have presented in addition to what it did present. Godoy is distinguishable in the sense that Godoy, the state rested on a declaration that triggered the presumption of evidence. That's not what happened here. What happened here was what the juror said after the verdict, I wouldn't say triggered the presumption because the Nevada Supreme Court held that the presumption was not triggered. But it did alert the court that there may be a situation where they needed to inquire a little further. And so it wasn't that the state was relying on the original evidence. It's that the state actually put on extra evidence. And that was to bring in the juror and to hold an entire evidentiary hearing to determine whether this contact was de minimis. And if it wasn't, if the presumption was triggered, could the state then rebut the presumption? In either scenario, the Nevada Supreme Court held the contact was de minimis. And we would submit that the contact was de minimis and that the presumption was not triggered. But even if this court were to say that the presumption of prejudice was triggered, the state rebutted that presumption by putting on enough evidence. And in Godoy, they state that there is the length of some of the factors that they can look at is the length of the contact, the evidence of the actual impact on the juror, and the possibility of eliminating prejudice through eliminating instruction. We have that here, Your Honor. Even if the contact was not de minimis, we have how long the contact was. It was at the mailbox. It was a quick conversation. We have the evidence of the actual impact on the juror. He was questioned multiple times and pretty thoroughly by the trial court on how this would have impacted him. I agree with you on that, but defendant is arguing that we're precluded from looking at the subjective evidence because it's not direct on point to what we're looking at, that we should be looking at this objectively. What's your response to that? Well, even looking at it objectively, Your Honor, Godoy says that you could consider the actual impact on the juror. How do we consider the actual – what best way to consider that if not to put him on the stand and ask him, what was the actual impact of this statement on your decision? And he said there was – he said, and quote, hey, it's a nice day outside. That's how he felt about that comment. It's just an – it was just an opinion of his. It did not affect his presumption of innocence. And, in fact, he was – the court did provide instructions on the presumption of innocence after this contact happened. And a jury is presumed to follow those instructions. I would also like to point to the district court's – Do you agree that it's misconduct here, though, that this was misconduct on part of the juror? Your Honor, I would say, like the Nevada Supreme Court said, that this conduct might have been improper, but it was not enough to trigger the presumption of prejudice. I understand. But I'm just wondering if you – I mean, do we need to get into objectively whether there was misconduct at all, or do we assume that as a fact here because both parties have conceded it, and then just get into whether it was prejudicial? Well, Your Honor, you need to look at whether the presumption of prejudice was even triggered. So although the – So you could say that it was harmful – you could say it was improper, but not improper enough to hit that threshold. Correct, Your Honor. And that's supported by even Godoy that says even the contact – even contact about the case can be insufficient to trigger presumption if the surrounding circumstances show that the contact was innocuous. We don't even have a case where he was talking about – juror 200 was talking about this case. He said nothing about the facts of the case, only that the facts sickened him. The fact that he said the facts sickened him, that's where the Nevada Supreme Court said that contact was improper. But it was not enough – it was too innocuous to trigger the presumption. Although, I mean, it does not – it doesn't seem a stretch to suggest that – assuming, as I think we have to, that the officer said they wouldn't be there if there wasn't something to it or something to that effect, that that wouldn't have been related to this case. Even if it was two separate parts of the conversation, the jurors left with the idea – I mean, it's not implausible to think that the jurors left with this idea of, hey, I told him I've got this tough case, and the response was, well, he probably did something because, you know, no one's there without doing anything. And, Your Honor, I would – that's exactly on point of what the district court kind of said. What they said was – the district court said jurors are hardly insulated from a multitude of casual contacts over the course of their lives. If exposure to such opinions at the dinner table, coffee shop, on the way to work, proverbial water cooler rendered jurors incapable of following court instructions on inter alia presumption of innocence, courts would have considerably difficulty and be able to seat a jury. And that's true here. We hear constant comments like defendants wouldn't be charged if they were not guilty. Only guilty people don't testify. Only guilty people have to worry about warrantless searches. So you're sort of arguing for a per se rule now that if the comment doesn't go to the specifics of a case, that it can't be – it can't trigger this presumption, that has to be rebutted. Not necessarily, Your Honor. I'm sure there are circumstances that – and Nevada law supports this. There are circumstances where – and it doesn't have to be about the facts of the case. The contact is so prejudicial that we don't even have a rebuttable presumption. It's automatic prejudice, which is a little bit more than what the federal rules require, the federal case law requires. So Nevada recognizes that there are certain circumstances and they don't – the case law doesn't specify that it has to be about the facts of the case. But there is contact that exists that is so highly prejudicial that the state can't rebut it. It's done. It's prejudicial and the inquiry is over. And it doesn't necessarily have to be about the facts of the case. But we do have to look at just what us as humans hear on a regular basis. How many times have we heard that somebody that does not testify must be guilty? But we have to say that when a jury comes in and when – during voir dire and during the entire selection process, that they will – that despite what they hear on a daily basis, a judge and attorneys and the state are sitting there telling them, look, no matter what you've heard before, last week, today, these are your instructions. Somebody is innocent until proven guilty, and they have to be proven guilty beyond a reasonable doubt. Those instructions are explicit. They read those instructions. They follow those instructions. We have here a contact that was so innocuous and meant nothing to this juror, and he didn't go into the jury room and repeat it. Well, we don't know that. We don't know that, Your Honor, but we can – we can speculate. I don't know. Yeah, we can speculate. You're right. You're right. That's speculation. But, you know, he wasn't – it wasn't like, for example, I believe it was Godoy – yes, it was Godoy where the juror was in there texting with a judge friend and kind of, you know, saying, oh, this is what my judge friend is saying via text. That's not what happened here. We have a contact. He came back. He listened to the presumption of innocence. He deliberated. He, in fact, said, hey, it was a he said, she said when I went in there. It seems like the jury went back and forth, and ultimately they decided beyond a reasonable doubt that this defendant was guilty of the charges. All but one, I believe, is what he was convicted of. Do you have any case that applies Maddox and Remmer and comes out in favor of the government that you think is close to this one? That comes out in favor of the government? What's the closest case for us? I would say maybe Tarango is the closest case only because this court stated that it wasn't against clearly established federal law. It was that that contact was a communication. So it was a police officer following a juror for seven miles. But even that one, that police, the case involved a lot of police witnesses and I believe police victims, so that's even a stretch to say Tarango. This is unlike any of the, it's unlike Godoy, Tarango, Caliendo, Maddox, or Remmer because you don't have someone that's really tied to the case imposing their influence. On the jury, and I see that I'm out of time, Your Honors. For that reason, we do request that this court affirm the district court's order. Thank you. Thank you, Ms. Gabriel. Ms. Sandberg. Your Honors, this contact was clearly prejudicial. The first thing that juror 200 said after the verdict came down, the first thing he said in response to the question, how did you come to your verdict was, well, it's like my police officer neighbor says, he wouldn't be here if he hadn't done something. That's the first thing he said in response to the question, how did you come to this verdict? That statement is clearly prejudicial. Whether or not juror 200 then comes back several days later at a hearing and says, no, I wasn't influenced by my police officer neighbor's statement is not relevant under these facts. What if he'd had the conversation with the police officer before he was selected as a juror and the police officer said, well, he must have done something or he wouldn't be there. What about that? I think if that were the case and the juror 200 credited what his police officer neighbor said, then we would be in a claim of juror bias, assuming that the juror 200 didn't tell the court on voir dire, yes, I don't believe in the presumption of innocence because my— Well, he wouldn't have to believe what the police officer said anyway. He just said he wouldn't be influenced by anything else and can be clear and impartial, excuse me, impartial juror in the case. I do think it's relevant that this contact happened during the trial and that it happened— That would be different. This juror said under oath that he respects the work that his neighbor does and hearing it on a TV show is entirely different than— Yeah, but you really couldn't expect anybody to say anything different, right? I'm sorry? You really wouldn't expect somebody to say something different. That is, I disrespect the work that the police do. True. That would be an odd comment to make. Well, that's true. That's true. I want to ask you the same question I asked Ms. Gabriel. So what's the closest case to this? What is the closest case in which we've got— what I'm really looking for is a case in which the comment that is made to the juror is made without knowing anything about the case. Have you got any cases close? That's the most striking thing about this case as opposed to the other ones is in all of the other cases where you have a bailiff who says something or the officer is following somebody, that it does appear to be case-specific. That is, that the person who makes the comment to the juror knows what case the juror is sitting on. Your Honor, I don't believe I have a case where the comment is made and I don't believe I have a case like that. However, I think the question is did it affect the juror, not was the person who made the third-party contact involved in the case. And again, how do we tell whether the juror was affected? By the surrounding circumstances. One way we know this juror was affected is because his response to the question, how did you come to your verdict, was it's like my police officer neighbor said. He wouldn't be here if he didn't do something. That is the strongest evidence that this juror absolutely was affected. It's not surprising that days later when he came back for a hearing, he changed and said, well, I wasn't affected. He may have even wanted to believe that he wasn't affected. But the strongest evidence is that the first thing out of his mouth was, this is what my neighbor said. That's how I came to my verdict. I would ask this Court to grant the writ, but if the Court is not persuaded that the State definitely cannot rebut the presumption, I ask for a remand for a hearing. Thank you. Thank you, Ms. Sandberg. We thank both counsel for the argument. Von Tobler v. Benedetti is submitted.
judges: Siler, Bybee, R. Nelson